**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| ROBERT RIEGER,<br><br>    Plaintiff,<br><br>    v.<br><br>3M COMPANY,<br><br>    Defendant. | Case No. 22-cv-994<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Comes now, Robert Rieger, through his undersigned attorneys, and respectfully alleges the following:

1. Plaintiff Robert Rieger ("Rieger") was employed by Defendant 3M Company ("3M") at their plant location in Aberdeen, South Dakota until he was wrongfully terminated because of discrimination related to his disabilities and his age, and in retaliation for reporting discriminatory conduct at the plant. Rieger's termination was in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Age Discrimination in Employment Act ("ADEA"), and related South Dakota state statutes.

**JURISDICTION**

2. This Court has jurisdiction over this lawsuit under 28 U.S. Code § 1331 because the action arises under Title VII, as amended, per 42 U.S.C. § 2000 *et seq*., the ADA, 42 U.S.C. § 12201, *et. seq*., the FMLA, 29 U.S.C. § 2611, *et seq.*, and the ADEA, 29 U.S.C. § 621, *et seq.*

3. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4. Defendant 3M is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Maplewood, Minnesota.

5. Venue is proper in accordance with 28 U.S.C. § 1391(b)(1), as 3M resides in this District because its principal place of business is in this state, and it is the sole Defendant.

## DISCRIMINATION CHARGE FILED WITH EEOC

6. Rieger timely filed a formal discrimination Complaint with the U.S. Equal Employment Opportunity Commission (the "EEOC"). Rieger received a Notice of Right to Sue dated January 31, 2022 from the EEOC.

## DISCRIMINATION IN VIOLATION OF FEDERAL LAW

7. Rieger suffers from health issues including sleep apnea, diabetes, circulation problems, and atrial fibrillation. At the time of his termination from 3M on July 13, 2021, he was 66 years old.

8. Rieger worked overnight from midnight to 8 a.m. in the Preform Department, often working on machines 103 and 108.

9. Rieger notified his supervisors and the health department at 3M of his health issues. Rieger's supervisors Shawna Kiefer, Darin Angerhofer, and Dave Rook were aware of his health issues.

10. Kiefer would regularly tell Rieger that he should switch shifts because of his health issues. And Angerhofer would ask Rieger if he was willing to change shifts.

2

11. Kiefer and Angerhofer would also ask Rieger when he was going to retire because he is getting old. They did this individually at different times during Rieger's employment.

12. However, Rieger preferred working at night and on the preform products he was charged with, and he always made his quota. Rieger also provided ideas for making machines work better and a few of them were implemented, improving productivity levels at the plant.

13. Rieger was qualified for FMLA, but was written up, suspended from work for a day, and given one year of probation for getting sick on the job and allegedly sleeping.

14. Upon returning to work for his next shift after being written up and being suspended, Angerhofer made fun of Rieger for his health issues and allegedly sleeping.

15. At one point in 2021, Rieger was working on machine 103 or 108 and saw John Wingo being harassed by Kue Moo and Yanai Soe and being out of their work areas. Rieger reported this to his supervisor, and Angerhofer told him, "We have video of them coming back here."

16. Multiple times while working on the machine 103 preformer, Rieger has seen Moo and Soe standing in the 2000 area, which is not their area, making threatening gestures at Wingo while Wingo was running the BHF slitter. Rieger reported these things to his supervisors.

17. On June 10, 2021, Rieger heard an operator in his department who was working on machine 108 call the security guard about a possible shooter or mysterious person sitting on the cement behind his machine for two hours. Rieger discovered it was Kevin

3

Gibson – a supervisor of Wingo and Desiree Holler – and Rieger heard Gibson tell security that he was doing a time study on Wingo and Holler. Rieger heard this phone conversation, and relayed this information to Wingo that Gibson was watching them.

18. On June 11, 2021, the next day after the incident with Gibson, Angerhofer repeatedly came up to Rieger to make fun of him for his health issues and using FMLA leave, just as he had done previously, but this time it was several times during the shift. Angerhofer yelled at Rieger, "Bob, are you sleeping!?" Angerhofer did this to draw attention to Rieger and make him feel bad about his disabilities and FMLA status.

19. Also on June 11, 2021, Rieger asks Angerhofer if he thought there might be something going on with Gibson, whether Gibson has an issue with Wingo or Holler and instead of hiding and doing a time study on them why did he not just talk to them. Rieger told Angerhofer that Wingo and Holler are really good, hard workers, and Rieger thought to sit behind the Avenger machine for two hours on the cement scaring everyone was crazy.

20. On June 15, 2021 at 6 a.m., Angerhofer snuck up behind Rieger and yelled his name, saying, "Bob are you sleeping?" Rieger jumps from his yelling, and says no, he was looking at the maintenance screen to see how many times the previous shift wrote up his machine for a water leak that Rieger had spent much of his shift cleaning up.

21. June 17, 2021, Angerhofer tells Rieger he had to write him up for sleeping. Rieger responds that he was not sleeping and Angerhofer knows it, and Angerhofer told Rieger, "Well, you can tell HR that."

4

22. Every morning from June 18 to June 25 Angerhofer tells Rieger that they are considering whether to suspend him for a week or terminate him. Rieger is stressed about his job status especially considering that he was not sleeping as he has been accused of.

23. When Angerhofer came up behind Rieger and yelled his name, there was only one person in the area at the time, John Wingo. Wingo saw Angerhofer sneak up behind Rieger and yell his name, and knew that Rieger was not sleeping.

24. However, Angerhofer did not get a statement from Wingo. Instead, Angerhofer tried to enlist another employee who was in Rieger's department that night but was in a different area to write up a statement that Rieger was sleeping when Angerhofer came back to machine 108. The other employee told Rieger that Angerhofer asked him to write this statement, but that he was not comfortable with doing that because he did not see Rieger sleeping and was not in the area.

25. Angerhofer asked for a false statement from an employee who was not in the area at the time, but did not ask for a statement from the person, Wingo, who could disprove Angerhofer's accusations against Rieger.

26. Around the same time, Rieger was required to train a new employee who was a felon and was known to be on the sex offender list. Rieger objected to having to train this person, but was required to do so.

27. While training this new hire, the new hire would make inappropriate sexual comments, including innuendos and other nasty things, to women in the 2000 area that was located next to machine 103, which Rieger sometimes operated.

5

28. Rieger reported this to Angerhofer, saying that he did not want to work with the new hire any longer because Rieger did not want to be around him in case he said something derogatory to a woman who thought Rieger was a part of it and would then turn them both in for sexual harassment. Angerhofer asked for specifics of what the new hire was saying, and Rieger told him.

29. Instead of disciplining the new hire, Angerhofer kept the new hire in his same spot and then told the new hire that he could have Rieger's job, because Rieger was going to be retiring soon. Rieger had no intentions of retiring, and had never told anyone that was going to happen.

30. The new hire was moved to a new department, but Angerhofer brought him back in early June 2021.

31. Rieger went on vacation beginning June 29, 2021, and was gone for two weeks. Angerhofer texted Rieger a few times on vacation to see when he was coming back, which was always supposed to be a shift starting at midnight on July 13, 2021. When Rieger showed up for his shift late in the evening of July 12, 2021, Angerhofer met with him and said HR had decided to terminate him.

32. Rieger used his intermittent FMLA to take days off of work as needed to care of his circulation, diabetes, and the like. However, once Wingo told supervisors such as Rook that Rieger had told Wingo that Gibson was hiding behind the Avenger machine for two hours and got called into security while watching Wingo, Angerhofer told Rieger that he needed to be at work every night, contrary to what was told to Rieger before that he was supposed to predict when he was sick and stay home.

33. Angerhofer also moved the new hire back into the department with Rieger and told him that Rieger was going to retire. Shortly thereafter, Angerhofer made up the story about Rieger sleeping on June 15, asks for a false statement from another employee who did not witness Rieger sleeping, does not collect information from Wingo who was there and saw Rieger not sleeping, and uses that incident to get him terminated.

34. Rieger was not disciplined or terminated until he reported mistreatment of Wingo and female employees to his supervisors at 3M.

35. Rieger experienced harassment based on his age and disability status at the hands of his supervisors.

36. Rieger was wrongfully terminated because of his FMLA status, disability, age, and/or in retaliation for making complaints about the discriminatory conduct of his coworkers and his supervisors.

37. Rieger was retaliated against by 3M for having complained of the discriminatory treatment of Wingo. As a result of the retaliatory actions of his supervisors and their lack of response to the discriminatory treatment that Wingo and his coworkers endured, Rieger was constructively discharged terminated from his position at 3M.

38. As a direct and proximate result of Defendant's discriminatory and retaliatory treatment of Rieger, he has suffered actual and consequential damages. Defendant's discriminatory practices have caused Rieger injury, including, but not limited to, lost earnings (past and future), lost benefits, emotional pain and suffering, mental anguish, humiliation, embarrassment, loss of enjoyment of life, court costs, litigation expenses (including reasonable attorneys' fees) and other damages as will be proven at trial.

39.    Rieger is entitled to equitable relief and damages for Defendant's discriminatory practices as permitted under law.

## COUNT I
## DISCRIMINATION IN VIOLATION OF TITLE VII

40.    Plaintiff reincorporates by reference paragraphs 1 through 39 and incorporates them herein.

41.    Defendant 3M's actions as set forth above constitute discrimination against Plaintiff in violation of Title VII, as amended, 42 U.S.C.§2000e-(a)(1).

## COUNT II
## RETALIATION UNDER TITLE VII

42.    Plaintiff reincorporates by reference paragraphs 1 through 39 and incorporates them herein.

43.    Defendant 3M's actions as set forth above constitute retaliation against Plaintiff in violation of Title VII, as amended, 42 U.S.C.§2000e-3(a).

## COUNT III
## DISCRIMINATION IN VIOLATION OF THE ADA

44.    Plaintiff reincorporates by reference paragraphs 1 through 39 and incorporates them herein.

45.    Defendant 3M's actions as set forth above constitute a violation of the ADA in violation of 42 U.S.C. §12112.

## COUNT IV
## RETALIATION UNDER THE ADA

46.    Plaintiff reincorporates by reference paragraphs 1 through 39 and incorporates them herein.

47. Defendant 3M's actions as set forth above constitute retaliation against Plaintiff in violation of the ADA, 42 U.S.C. §12203.

## COUNT V
## DISCRIMINATION IN VIOLATION OF THE ADEA

48. Plaintiff reincorporates by reference paragraphs 1 through 39 and incorporates them herein.

49. Defendant 3M's actions as set forth above constitute discrimination against Plaintiff in violation of the ADEA, 29 U.S.C. § 623(a).

## COUNT VI
## RETALIATION UNDER THE ADEA

50. Plaintiff reincorporates by reference paragraphs 1 through 39 and incorporates them herein.

51. Defendant 3M's actions as set forth above constitute retaliation against Plaintiff in violation of the ADEA, 29 U.S.C. § 623(d).

## COUNT VII
## DISCRIMINATION IN VIOLATION OF THE FMLA

52. Plaintiff reincorporates by reference paragraphs 1 through 39 and incorporates them herein.

53. Defendant 3M's actions as set forth above constitute discrimination against Plaintiff in violation of the FMLA, 29 U.S.C. § 2615.

## COUNT VIII
## RETALIATION UNDER THE FMLA

54. Plaintiff reincorporates by reference paragraphs 1 through 39 and incorporates them herein.

55. Defendant 3M's actions as set forth above constitute retaliation against Plaintiff in violation of the FMLA, 29 U.S.C. § 2615.

## COUNT IX
## DISCRIMINATION IN VIOLATION OF STATE LAW
## SECTION 20-13-10 – UNFAIR OR DISCRIMINATORY PRACTICES

56. Plaintiff realleges paragraphs 1 through 39 and incorporates them herein.

57. Defendant's actions as set forth above constitute discrimination against Plaintiff based on his disability in violation of the South Dakota Human Rights Act, South Dakota Code § 20-13-10, in that as Plaintiff's employer, 3M, through their agents as detailed above, discharged and accorded adverse or unequal treatment to Plaintiff as an employee of 3M with respect to his training, promotion, upgrading, compensation, employment, and other terms or conditions of her employment. These actions were taken on account of Plaintiff's disability.

## COUNT X
## STATE CLAIM OF RETALIATION

58. Plaintiff reincorporates by reference paragraphs 1 through 39 and incorporates them herein.

59. Plaintiff was reassigned to a lesser working assignment and retaliated against for making reports of discriminatory conduct in violation of the South Dakota Human Rights Act.

60. Defendant's actions as set forth above constitute retaliation against Plaintiff in violation of the South Dakota Human Rights Act, South Dakota Code § 20-13-26, in that

3M, by and through its agents as detailed above, did engage in reprisal against Plaintiff by reason of his reporting the discriminatory conduct of his coworkers and supervisors.

Wherefore, Plaintiff respectfully requests that Defendant's actions be declared unlawful and enter judgment in his favor and against Defendant and award:

1. Compensatory damages, including for emotional distress, as the evidence at trial may show;

2. Damages against Defendant including but not limited to those damages allowed by Title VII, the South Dakota Human Relations Act, and any other pertinent and applicable statute, rule or regulation;

3. For Plaintiff's damages, including but not limited to, lost wages and benefits.

4. For Plaintiff's costs, disbursements, and expenses.

5. For Plaintiff's attorney's fees.

6. Pre- and post-judgment interest, costs, expert witness fees and such other relief as the court deems proper; and

7. For such other relief as the court deems just and equitable.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS.

Dated this 20th day of April, 2022.

**FIEBIGER LAW LLC**

s/Rolf T. Fiebiger
Thomas D. Fiebiger (#307506)
Rolf T. Fiebiger (#391138)
6800 France Ave. S., Suite 190
Edina, MN 55435
(612) 399-6474

(612) 888-6084
tom@fiebigerlaw.com
rolf@fiebigerlaw.com

ATTORNEYS FOR PLAINTIFF